**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**S. ADELE SHANK, ATTORNEY
As next friend for KEVIN P. SCUDDER,**

       **Petitioner,**

    **v.**                            **Case No. 2:00-CV-17
JUDGE MARBLEY**

**BETTY MITCHELL, Warden,**             **Magistrate Judge Kemp**

       **Respondent.**

## <u>OPINION AND ORDER</u>

Petitioner, a state prisoner sentenced to death by the State of Ohio, has pending before this Court a habeas corpus action pursuant to 28 U.S.C. §2254. This matter is before the Court upon petitioner's motion for leave to conduct discovery, (Doc. # 185), petitioner's motion for an evidentiary hearing, (Doc. # 186), respondent's memorandum in opposition, (Doc. # 187), and petitioner's reply, (Doc. # 190).

### I. Motion for Discovery

Petitioner seeks to conduct discovery regarding his claims of ineffective assistance of counsel during the trial and penalty phases of his capital trial (fifth, sixth, seventh and eighth grounds for relief), and his claim that the state withheld *Brady* material concerning his competency to stand trial and concerning potential witness David Bonner (fourth and seventeenth grounds for relief). In addition, petitioner seeks discovery regarding a missing exhibit.

Regarding these claims, petitioner seeks to conduct the following discovery:

A.    Depositions of trial counsel, Karl Schneider and Thomas Erlenbach, and
        prosecutors Tim Merkle and Daniel Hogan.

B.  Record deposition and/or subpoena duces tecum for the investigative documents, including but not limited to documents concerning the interview of witness David Bonner, that are maintained by the Columbus Police Department, the Pickaway County Sheriff's Department, and the Franklin County Sheriff's Department.

C.  Record deposition and/or subpoena duces tecum for the plant material/wood chip used against petitioner at trial.

(Petitioner's Motion for Discovery, doc. # 185, at 1-2.)

Respondent opposes petitioner's discovery requests, arguing that petitioner cannot meet the standard for habeas corpus discovery. According to respondent, petitioner has not shown good cause to conduct the discovery that he seeks, and petitioner has offered nothing but speculation as to what he hopes to find. (Doc. # 187, at 2-7.)

The discovery processes contained in the Federal Rules of Civil Procedure do not automatically apply in habeas corpus actions. "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley*, 520 U.S. 899, 904 (1997). In *Harris v. Nelson*, 394 U.S. 286, 295 (1969), the United States Supreme Court held that the "broad discovery provisions" of the Federal Rules of Civil Procedure did not apply in habeas corpus proceedings. As a result of the holding in *Harris*, the Rules Governing Section 2254 Cases In United States District Courts were promulgated in 1976.

Specifically, Rule 6(a) provides--

> A party shall be entitled to invoke the processes of discovery available under the Federal Rules of Civil Procedure if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise.

Under this "good cause" standard, a district court should grant leave to conduct discovery in habeas corpus proceedings only "'where specific allegations before the court show reason to believe that the petitioner may, if the facts are more fully developed, be able to demonstrate that

he is . . . entitled to relief . . . .'" *Bracy*, 520 U.S. at 908-909 (quoting *Harris*, 394 U.S. at 300). *See also Williams v. Bagley*, 380 F.3d 932, 974 (6th Cir. 2004); *Stanford v. Parker*, 266 F.3d 442, 460 (6th Cir. 2001). In keeping with the well settled principle that habeas petitioners are not entitled to go on a fishing expedition in search of damaging evidence, Rule 6's "good cause" standard requires petitioner to at least attempt to identify what he expects to uncover through his discovery requests. *See Williams,* 380 F.3d at 976. With these principles in mind, the Court will consider petitioner's discovery requests.

### A. Ineffective Assistance of Counsel

Petitioner seeks to conduct discovery on the numerous allegations of ineffective assistance of trial counsel set forth in his fifth, sixth, seventh and eighth grounds for relief. Specifically, petitioner argues that the following acts or omissions on the part of his attorneys were objectively unreasonable:

a. Failure to challenge the DNA evidence used at trial (fifth ground for relief).

b. Failure to object to various evidentiary instructions and procedures (sixth ground for relief).

c. Failure to call David Bonner as a witness (seventh ground for relief).

d. Failure to prepare for the mitigation phase (eighth ground for relief).

(Petitioner's Motion for Discovery, doc. # 185, at 3.)

In order to determine whether petitioner is entitled to conduct discovery on these claims, the Court must identify the essential elements of the claims. *Bracy*, 520 U.S. at 904. The right to counsel guaranteed by the Sixth Amendment is the right to the effective assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970). The standard for reviewing a claim of ineffective assistance of counsel is twofold:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984). With respect to the first prong of the *Strickland* test, the Court notes that, "[b]ecause of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

To establish the second prong of the *Strickland* test, *i.e.*, prejudice, a petitioner must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Id*. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. Because petitioner must satisfy both prongs of the *Strickland* test to demonstrate ineffective assistance of counsel, should the Court determine that petitioner has failed to satisfy one prong, it need not consider the other. *Id*. at 697. Although petitioner need not prove these elements in connection with his discovery request, he must show that if the facts are developed through the discovery he seeks, he could prove a *Strickland* violation and would be entitled to relief. *See Harris*, 394 U.S. at 299.

Inherent in counsel's responsibilities is the duty to investigate. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland,* 466 U.S. at 691; *Sims v. Livesay*, 970 F.2d 1575, 1580-81 (6th Cir. 1992); *see also O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994) (failure to investigate, especially as to key evidence, must be supported by a reasoned and deliberate determination that investigation was not warranted); *Workman v. Tate*, 957 F.2d 1339, 1345-46

4

(6th Cir. 1992) (reasonable investigation was lacking, so counsel's performance was deficient).

In determining whether a particular act or omission on the part of counsel was outside the wide range of professional norms, this Court must accord a high measure of deference to counsel's decisions. *Strickland*, 466 U.S. at 681; *see also White v. McAninch*, 235 F.3d 988, 994-95 (6th Cir. 2000). Of course, a "strategic" or "tactical" decision is not automatically insulated from review, if it does not appear that the decision was supported by sufficient investigation.

> The determination as to whether counsel's trial strategy amounts to ineffective assistance of counsel should be made with respect to the thoroughness of the pretrial investigation that counsel conducted. The more thorough the investigation, the more deference the trial strategy receives, while strategic decisions made after incomplete investigation receive less....

*White v. McAninch*, 235 F.3d at 995-96 (citing *Strickland*, 466 U.S. at 690-91). *See also Wiggins v. Smith,* 539 U.S. 510, 521 (2003).

In determining whether petitioner can satisfy the "good cause" standard for conducting discovery, it stands to reason that the Court must also take into account the findings of the state courts regarding the issues on which petitioner seeks to conduct discovery. To satisfy the "good cause" standard for discovery, petitioner must demonstrate that the facts, if more fully developed, would entitle him to relief. Under the standard of review set forth in 28 U.S.C. §2254(d), petitioner would not be entitled to relief on his trial counsel ineffectiveness claims unless it appears that the state courts' rulings were contrary to or involved an unreasonable application of Supreme Court precedent, or that the state courts' factual findings were unreasonable based on the evidence presented.

In his fifth ground for relief, petitioner argues that his trial attorneys performed unreasonably and to his prejudice by failing to investigate and adequately challenge DNA evidence presented by the state during the guilt phase of his trial. (Am. Petition, Doc. # 121, at ¶ 16.) According to petitioner, counsel failed to call a defense expert in the area of DNA evidence despite the fact that the trial court gave counsel funds to hire an expert, failed to elicit from the state's expert that a number of prominent scientists had publicly questioned Cellmark's techniques, and "failed to adequately challenge the state's use of misleading, inapplicable and inaccurate DNA evidence based on gene pools of which petitioner Scudder is not a member." (Traverse, Doc. # 157, at 89, 95.)

This claim of trial counsel ineffectiveness was considered and rejected on direct appeal by the intermediate court of appeals and the Ohio Supreme Court. In rejecting petitioner's claim, the court of appeals noted that petitioner received funds to conduct his own independent analysis of the DNA evidence. The court held that it would not second-guess defense counsel, and would assume, "that the defense test also found that a match was probably made and that counsel consciously chose not to highlight the DNA evidence in order to downplay its impact and to cast doubt upon its validity by their vigorous cross-examination of the state's expert." (Doc. # 124, App. Vol. I, Ex. K at 27.) The Ohio Supreme Court affirmed the decision of the court of appeals, finding, generally, that all of petitioner's claims of ineffective assistance of counsel were without merit. (Doc. # 124, App. Vol. IV, Ex. X at 9); *State v. Scudder*, 71 Ohio St.3d 263, 273 (1994). Petitioner reasserted this claim in postconviction, and supported it with the affidavit of Dr. William Thompson, a DNA expert, who opined that counsel's performance was deficient in regard to the handling of the DNA evidence. The trial court and court of

appeals rejected petitioner's postconviction claim on the basis of *res judicata*, finding that the affidavit of Dr. Thompson did not constitute evidence *dehors* the record. (Doc. # 124, App. Vol. IV, Ex. PP at 9-10; Doc. # 124, App. Vol. V, Ex. VV at 9.)

The Court has considered petitioner's request to depose trial counsel regarding their preparation and strategy in connection with the DNA evidence, and out of an abundance of caution, the Court finds that there are more factors militating in favor of allowing discovery on this claim than against it. In *Wiggins v. Smith*, 539 U.S. 510 (2003), the Supreme Court emphasized that, "*Strickland* does not establish that a cursory investigation automatically justifies a tactical decision with respect to sentencing strategy. Rather, a reviewing court must consider the reasonableness of the investigation said to support that strategy." *Id*. at 527. In this case, petitioner argues that his counsel conducted little to no investigation concerning the DNA evidence. Although counsel were given funds to hire an independent DNA expert, and it appears that funds were expended to Louis Forensic to perform independent testing, the record contains no evidence about whether, or to what extent, counsel's decision not to present testimony from an expert witness was informed by any investigation. Thus, without any evidence in the record about the level of investigation that supported counsel's decision not to present testimony from a defense expert, it is difficult for the Court to determine whether counsel's decision was a tactical one that should not be second-guessed.

The Court is mindful that counsel may have commissioned a DNA expert, and based on that expert's opinions, may have decided to rely on cross-examination of the state's expert. That would be a reasonable hypothesis, but a hypothesis nonetheless. In a death penalty case, the Court would rather err on the side of gathering too much information rather than too little. At

this point, the record is unclear regarding counsel's level of preparation to handle the DNA evidence, and only trial counsel can provide clarity on this matter.

For these reasons, the Court is satisfied that petitioner has alleged facts which, if more fully developed through the discovery he seeks, could entitle him to relief. If counsel's decisions in connection with the handling of the DNA evidence were objectively unreasonable based on their investigation, and there is a reasonable probability that, but for counsel's decisions, the outcome of petitioner's trial would have been different, then petitioner would be entitled to relief on this claim. The DNA evidence was a very important component of the state's case against petitioner, as the identity of the perpetrator was at issue in this case. If a defense expert could have, at a bare minimum, called into question Cellmark's credibility or methodology, that may have been enough to sway the jury to assign the DNA evidence less weight. Under these circumstances, the Court is persuaded that petitioner's request to depose his trial counsel is reasonable, and that such discovery could shed light on this particular claim of ineffective assistance of counsel. Accordingly, the Court finds that petitioner is entitled to depose his trial attorneys in connection with his fifth ground for relief.

In his sixth ground for relief, petitioner argues that his counsel were ineffective because they failed to object to various evidentiary instructions and procedures. Specifically, petitioner claims that counsel failed to object to inadmissible evidence including other acts evidence and hearsay, failed to object to several instances of prosecutorial misconduct, failed to object to erroneous jury instructions, were ineffective during voir dire, and that counsel "continuously made misstatements of the law that were prejudicial to petitioner." (Am. Pet., doc. # 121, at ¶¶ 18-39.)

Petitioner raised these various claims of ineffective assistance of counsel on direct appeal. The court of appeals concluded, generally, that each of the alleged deficiencies had been addressed by the court on prior occasions, and were "held not to be error." (Doc. # 124, App. Vol. I, Ex. K at 27.) Likewise, the Ohio Supreme Court affirmed the decision of the court of appeals, finding that all of petitioner's claims of ineffective assistance of counsel were without merit. (Doc. # 124, App. Vol. IV, Ex. X at 9); *State v. Scudder*, 71 Ohio St.3d 263, 273 (1994).

The Court is not persuaded that petitioner has shown good cause to conduct discovery on his sixth ground for relief. Petitioner has not alleged facts which, if developed through the discovery he seeks, would entitle him to relief. Petitioner has not demonstrated, and the Court is not otherwise persuaded, that deposing defense counsel with respect to virtually every decision made at trial would assist him in developing facts that would support his claim that counsel's performance was constitutionally ineffective. Petitioner makes no attempt to establish that he has any likelihood of prevailing on the merits of this claim, and he makes no attempt to specify how the outcome of his trial was prejudiced by counsel's failure to object to any of the various evidentiary issues and procedures. That being so, the Court finds that petitioner has not established, or even attempted to establish, good cause for the discovery that he seeks in connection with his sixth ground for relief.

In his seventh ground for relief, petitioner argues that his trial counsel performed unreasonably and to his prejudice in failing to call David Bonner as an alibi witness. Petitioner alleges that Bonner "would have testified that he saw the victim with persons other than Petitioner at a time that precluded Petitioner's presence at the murder." (Am. Pet., doc. # 121, at ¶ 44.) According to petitioner, "[w]here counsel is aware of a potential alibi witness and fails to

subpoena them to ensure their presence at trial, such failure constitutes a substantial violation of an essential duty owed to the accused." (Doc. # 157, at 104.) Petitioner seeks to depose trial counsel with respect to this claim. In addition, petitioner seeks a records deposition and/or subpoena duces tecum for the investigative documents, including but not limited to documents concerning the interview of Bonner, that are maintained by the Columbus Police Department, the Pickaway County Sheriff's Department, and the Franklin County Sheriff's Department.

Petitioner presented this claim of ineffective assistance of counsel during his state postconviction proceedings as his fourth claim for relief. Petitioner argued that a defense investigator learned that Bonner may have seen the victim with individuals other than petitioner at around the time of the murder, and that trial counsel refused to call Bonner as a defense witness. (Doc. # 124, App., Vol. IV, Ex. FF at 19-20.) The trial court rejected petitioner's claim, finding that petitioner failed to support the claim with any evidence, affidavit or otherwise. Specifically, the trial court dismissed this claim for failure of proof, concluding that "[g]iven the lack of support for this claim, the most which can be determined is that defense counsel, for tactical reasons, chose not to call Bonner." (Doc. # 124, App. Vol. IV, Ex. PP at 1.) The court of appeals affirmed the decision of the trial court, finding that petitioner's claim concerning the potential alibi witness was "not supported by affidavit or other competent evidence outside the record." (Doc. # 124, App. Vol. V, Ex. VV at 9.)

The Court is persuaded that petitioner's request to depose his trial counsel concerning their failure to call a potential alibi witness is reasonable. The Court notes that the record contains no affidavits or testimony from trial counsel about their decisions, actions and omissions with respect to Bonner. Thus, there is no evidence in the record from which to

determine whether, or to what extent, defense counsel investigated David Bonner as a potential alibi witness. Without any evidence in the record about the level of investigation surrounding the potential testimony of Bonner, it is difficult for the Court to conclude whether counsel's decision not to call him was a tactical one that should not be second-guessed.

The Court is mindful that counsel may have investigated Bonner as a witness and determined, based on their investigation, that Bonner could not establish an alibi for petitioner, or that he would not have been a credible witness. Still, in a death penalty case, the Court would rather err on the side of gathering too much information rather than too little. Whatever the reason, information concerning Bonner is uniquely in possession of defense counsel, and only counsel can provide answers to the questions surrounding their failure to call Bonner. In light of the evidence against petitioner, any testimony that might have established that individuals other than petitioner were with the victim shortly before her death could only be characterized as favorable. For these reasons, the Court finds that petitioner has alleged facts which, if more fully developed through the discovery he seeks, could entitle him to relief. Accordingly, the Court finds that petitioner is entitled to depose his trial counsel in connection with his seventh ground for relief.

However, the Court finds that petitioner has not demonstrated how the law enforcement records he seeks would shed light on this claim of trial counsel ineffectiveness. Petitioner does not elaborate in either his motion for discovery or his reply why he believes there is evidence contained in the various police files that would advance any of his claims and lead to habeas relief. The issue in petitioner's seventh ground for relief is whether trial counsel's decision not to call Bonner as a witness was objectively unreasonable and prejudiced the outcome of

11

petitioner's trial. Petitioner has not attempted to establish how the records of the various law enforcement offices involved in the investigation would advance this claim. This Court will not grant petitioner unfettered, unqualified access to the government's files in the hopes that he will find something useful. Therefore, the Court denies petitioner's request for a records deposition and/or subpoena duces tecum for the investigative documents, including but not limited to documents concerning the interview of Bonner, that are maintained by the Columbus Police Department, the Pickaway County Sheriff's Department, and the Franklin County Sheriff's Department.

In his eighth ground for relief, petitioner alleges that his trial counsel failed to investigate and prepare for the sentencing phase of his trial. The gist of this claim is that counsel failed to obtain competent expert psychological assistance in mitigation, and that counsel failed to locate and provide the mitigation expert, Dr. Henry Leland, with all relevant records, including petitioner's family history, and all psychological reports concerning petitioner. (Am. Pet., doc. # 120, at ¶ 52.) Petitioner maintains that counsel failed to ensure that Dr. Leland conducted appropriate tests, that he was given complete information regarding petitioner, and that he understood the purpose of mitigation. (Am. Pet., doc. # 121, at ¶¶ 52-55.) Had counsel provided this information, petitioner argues, Dr. Leland would have been able to provide more favorable testimony for the defense.

Petitioner presented this claim to the state courts during his postconviction proceedings. In support of this claim, petitioner offered the affidavit of Dr. Jolie Brams, a licensed psychologist in the State of Ohio, who attacked the performance of trial counsel and the defense expert. The trial court and court of appeals dismissed petitioner's claim on the basis of *res*

*judicata*, finding that the Brams affidavit did not constitute evidence beyond the scope of the record.  (Doc. # 124, App. Vol. IV, Ex. PP at 10-11; Doc. # 124, App. Vol. V, Ex. VV at 9-10.)

The importance of competent representation during the penalty phase of a capital trial cannot be understated, especially with respect to the duty to investigate.  The determination of whether counsel's decisions in connection with the mitigation phase of petitioner's trial were reasonable is a question that can best be answered by petitioner's trial counsel.  As is usually the case, important information about defense strategy and what investigation was conducted to implement that strategy is uniquely in possession of those defense attorneys.  In this case, a review of the record reveals that petitioner had at least some basis for questioning counsel's mitigation phase performance.  Therefore, out of an abundance of caution, the Court finds that there are more factors militating in favor of allowing discovery on this claim than against it.  Accordingly, the Court grants petitioner's request to depose his trial counsel in connection with his eighth ground for relief.

## B.  Brady Claim

Petitioner seeks to depose the trial prosecutors, Tim Merkle and Daniel Hogan, concerning his claim that the state withheld *Brady* material pertaining to his competency to stand trial.  In his fourth ground for relief, petitioner contends that either prior to trial or prior to the completion of the sentencing phase of his trial, the state uncovered evidence that petitioner had been declared incompetent to make medical decisions only a few months before the events giving rise to this case occurred.  (Am. Pet., doc. # 121, at  ¶ 44.)  Petitioner argues that the state failed to provide this evidence, as well as some of petitioner's school records and records pertaining to his birth, to the trial court or defense counsel before using it to discredit Dr. Leland,

petitioner's only expert mitigation witness. (*Id*. at ¶ 45.) According to petitioner, he was ambushed with the records when "the state used [the records] to undermine Petitioner's mitigation expert by piling the documents on the witness stand and then belittling expert psychologist Dr. Henry Leland for not having reviewed them." (Am. Traverse, doc. # 157, at 87.) Had this information been provided at an earlier time, petitioner argues, it "would have aided the trial court, defense counsel, and the state forensic center psychologist in assessing Mr. Scudder's competency," and the information "would have aided Mr. Scudder in the presentation of mitigation and would have helped his mitigation expert." (*Id*.) Additionally, petitioner claims that the records might have led his trial counsel to pursue a defense of not guilty by reason of insanity. (*Id*.) Petitioner contends that because the records pertain to his competency to stand trial, they are exculpatory in nature and the state violated its duty under *Brady v. Maryland*, 373 U.S. 83 (1963), by withholding them.

In order to determine whether petitioner is entitled to conduct discovery on this claim, the Court must identify the essential elements of the claim. *Bracy*, 520 U.S. at 904. The rule in *Brady* requires the government "to turn over evidence in its possession that is both favorable to the accused and material to guilt or punishment." *Pennsylvania v. Ritchie*, 480 U.S. 39, 57 (1987). Materiality is determined by asking "whether the *Brady* violation undermines confidence in the verdict, because there is a reasonable probability that there would have been a different result had the evidence been disclosed." *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998). Petitioner need not prove these elements; rather, he must show that if the facts are developed through the discovery he seeks, he could prove a *Brady* violation and would be entitled to relief. *See Harris, supra*, 394 U.S. at 299.

Respondent opposes petitioner's request to depose the trial prosecutors. According to respondent, petitioner has not shown prima facie evidence that the state suppressed the information. Respondent contends that it is petitioner's own medical records that are at issue, and "Scudder points to nothing in the record to explain how the trial prosecutors prevented his attorneys from discovery his *own* records." (Doc. # 187, at 3.) Respondent argues that trial counsel were "able to retrieve any remaining medical or educational records the prosecution may have gotten," and there is nothing to indicate that petitioner's expert, Dr. Leland, was prevented from gathering this information. (*Id*.) Furthermore, respondent argues that even if the state suppressed the records, petitioner has not shown any prima facie evidence of prejudice to warrant discovery. (*Id*. at 4.) According to respondent, petitioner "points to nothing in these records that shows he would have been found incompetent," or that disclosure of the records would have resulted in a sentence other than death. (*Id*.)

Petitioner never presented the allegations underlying his fourth ground for relief to the state courts, and this Court has yet to determine whether cause and prejudice exist to excuse the default of this claim. Petitioner contends that he had no opportunity to discover the contents of the records until his current habeas counsel found them in the prosecutor's office while preparing for the competency hearing held by this Court. (Am. Traverse, doc. # 157, at 83.) The state's failure to disclose the records, petitioner argues, prevented him from discovering, developing, or presenting his fourth ground for relief prior to these proceedings. In its Opinion and Order of September 30, 2008, this Court determined that it would analyze petitioner's cause and prejudice argument in a subsequent Opinion and Order resolving the merits of petitioner's claims, because

the determination of whether petitioner can establish cause and prejudice to excuse the default involves addressing the merits of the claim.

In support of his discovery request, petitioner has provided affidavits from each of his trial attorneys attesting that, to the best of their recollection, "the prosecutor produced a large stack of records that we had not seen and thus had not been provided to Dr. Leland," during the state's cross-examination of Dr. Leland. (Doc. # 152, Ex. 1, 2.) Furthermore, defense counsel attest that they had no opportunity to review those documents. (*Id.*) For the reasons that follow, the Court finds that petitioner has not established good cause for discovery as to the alleged *Brady* violation set forth in his fourth ground for relief.

Petitioner has alleged that the state violated *Brady* by failing to turn over his own medical records. However, courts that have addressed similar issues have concluded that the state has no duty to disclose, and *Brady* is not violated by the failure to disclose, information or records that are readily available to the defense through the exercise of due diligence. *See, e.g.*, *LeCroy v. Secretary, Florida Dept. of Corrections*, 421 F.3d 1237, 1268 (11th Cir. 2005) ("In this case, defense counsel obviously could have obtained the defendant's *own* medical and school records by exercising reasonable diligence. Consequently, there is no *Brady* violation); *Tice v. Wilson*, 425 F.Supp.2d 676, 698 (W.D.Pa. 2006) ("State's failure to disclose existence and content of petitioner's own juvenile detention records did not constitute a *Brady* violation since that exculpatory evidence was fully available to petitioner through the exercise of due diligence."); *see also Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998) (finding that *Brady* "does not apply to information that is not wholly within the control of the prosecution," or "where the evidence is available from another source"); *Rector v. Johnson*, 120 F.3d 551, 558-59 (5th Cir. 1997) ("The

State has no obligation to point the defense toward potentially exculpatory evidence when that evidence is either in the possession of the defendant or can be discovered by exercising due diligence.").  Therefore, even if the facts are more fully developed through the discovery that he seeks, petitioner is still unlikely to prevail on this claim.  Accordingly, the Court finds that petitioner has not established good cause to conduct discovery concerning his fourth ground for relief.

In his reply brief, petitioner requests, for the first time, permission to depose the trial prosecutors in connection with the *Brady* claim set forth in paragraph 114 of his seventeenth ground for relief.  In paragraph 114, petitioner alleges that the trial prosecutors led potential defense witness David Bonner "to believe that he should not talk to defense counsel," and that the prosecutors "failed to disclose the exculpatory evidence Mr. Bonner had to offer."  (Am. Petition, doc. # 121, at ¶ 114.)

A federal habeas court may grant discovery only where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief.  *Bracy v. Gramley*, 520 U.S. 899, 909 (1997).  With respect to *Brady* claims and proving that discovery is warranted thereon, the Court is mindful of the difficulties inherent in describing what facts the petitioner hopes to uncover.  However, pleading a claim under *Brady* does not automatically erase a petitioner's duty to state with some specificity what he intends to find or prove from his discovery requests.  In this case, petitioner has been vague, at best, with respect to what he hopes to discover during his deposition of the trial prosecutors.  Petitioner has offered nothing but vague, conclusory allegations regarding the state's conduct concerning this alleged witness, and petitioner has not attempted to suggest what

information the prosecution allegedly withheld from defense counsel.  In fact, petitioner's ineffective assistance of counsel claim contained in his seventh ground for relief is premised upon the assertion that his trial counsel were well aware of Bonner's potentially exculpatory information, yet they refused to call him as a defense witness.  Without something more than mere speculation, this Court cannot grant petitioner's request to depose the trial prosecutors in connection with his seventeenth ground for relief.

## C.  Missing Exhibit

Finally, petitioner seeks permission to take the deposition of the Franklin County Prosecuting Attorney, with a subpoena duces tecum for the plant material used against petitioner at trial.  (Doc. # 185, at 4.)  During the guilt phase of petitioner's trial, the state attempted to place petitioner at the crime scene by introducing a wood chip found lodged in the undercarriage of petitioner's car, and then presenting testimony that the wood chip matched a broken stick found near the victim's body.  (Tr. Trans. at 1614, 1624.)  During petitioner's direct appeal, the parties discovered that the wood chip had been lost.  (Doc. # 128, App. Vol. X at 80, 339-347.)  The state represented to the Ohio Supreme Court that "[a] diligent, but unsuccessful search has been made to locate State's Exhibit 121 (wood chip)."  (Doc. # 128, App. Vol. X at 80.)

Petitioner contends that this Court should grant discovery with respect to the missing wood chip, because "a recent news article indicates that in some cases, the search for missing evidence by the Franklin County Prosecutor has been less than thorough and the subsequent searches with higher motivation have yield[ed] evidence supposedly lost . . . ."  (Petitioner's Motion for Discovery, doc. # 185, at 5.)  According to petitioner:

> Recently, the Franklin County Prosecuting Attorney discovered evidence, in
> another case, that an earlier search had determined had been lost.  This

information was found because someone was instructed to turn everything upside down. A similar effort should be made in this case.

(*Id*. at 4.)

Respondent opposes petitioner's request for permission to depose the Franklin County Prosecutor with a subpoena duces tecum. Respondent argues that petitioner has not satisfied the good cause standard with respect to this request, and petitioner has not identified the claim or claims that are related to his request. As noted by respondent, "Petitioner gives no reason why the wood chip is important or how finding it will prove any of his claims." (Doc. # 187, at 6.)

In his reply, petitioner argues, for the first time, that his request to have the prosecutor "turn everything upside down" is related to his fifteenth ground for relief, which alleges that there was insufficient evidence to support petitioner's convictions and sentence of death. Petitioner argues:

> Had the government not removed the evidence from the custody of the Court in the first place, its absence would not be an issue. The Government took this action without formal order or notice to Petitioner. The wood chip was used as evidence that Scudder was at the scene of the crime and cited by the Ohio Supreme Court in support of its decision that the evidence was sufficient to convict. Petitioner's 15th Claim challenges the sufficiency of the evidence and has not been defaulted. The state found the wood chip important enough to introduce as evidence. The Ohio Supreme Court found it important enough to cite in support of sufficiency. Petitioner has made a *prima facie* showing.

(Doc. # 190, at 5.)

In order to determine whether petitioner is entitled to conduct discovery on his sufficiency of the evidence claim, the Court must identify the essential elements of the claim. *See Bracy*, 520 U.S. at 904. Sufficiency of the evidence questions are governed by the United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979). When a state prisoner challenges the sufficiency of evidence, a federal habeas court must consider whether

19

there was sufficient evidence introduced at trial to allow a rational trier of fact to find guilt beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. To determine whether the evidence was sufficient to support a conviction as a matter of due process, this Court must consider the evidence in the light most favorable to the prosecution, keeping in mind that the prosecution is not required to "rule out every hypothesis except that of guilt." *Id*. at 326. A sufficiency of the evidence review, for purposes of federal habeas relief, does not focus on whether the trier of fact made the correct guilt or innocence determination, but whether it made a rational decision to convict or acquit. *Herrera v. Collins*, 506 U.S. 390, 402 (1993) (clarifying *Jackson*, 443 U.S. 307 (1979)).

In the instant matter, the Ohio Supreme Court concluded that sufficient evidence supported petitioner's aggravated murder conviction. (Doc. # 124, App. Vol. IV, Ex. X at 9); *State v. Scudder*, 71 Ohio St.3d 263, 274 (1994). According to the Ohio Supreme Court:

> In the case at bar, appellant had a knife and desperately wanted to be alone with Tina. Appellant and Tina left Dempsey's home on February 7, 1989, at approximately 3:15 a.m. Approximately one hour later, appellant was covered with blood and was seen throwing an object (perhaps the murder weapon) into a trash dumpster. The object made a noise as it hit the dumpster. Appellant stood in a parking lot for approximately ten minutes before hysterically claiming that he had been shot and that someone was after him. During this period, appellant had apparently concocted a story to explain Tina's disappearance and to insulate himself from suspicion. That story proved to be utterly false. The evidence, if accepted, clearly established that Tina was attacked in the front seat of appellant's Buick, dragged out the driver's side, forcibly undressed, and stabbed to death while lying on the ground near the driver's side of appellant's vehicle. DNA evidence linked appellant to the killing. Evidence was also presented which, if believed, established that Tina was killed with a knife similar to the one appellant possessed on the night of the murder. Further, a broken stick found at the murder scene matched a wood chip recovered from the underbody of appellant's vehicle.
>
> Upon a thorough review of the record, we find that the direct and circumstantial evidence in this case, and the reasonable inferences that can be drawn therefrom,

was more than sufficient to establish appellant's identity as the perpetrator of the offenses.

*Scudder*, 71 Ohio St.3d at 274.

The Court finds that petitioner is not entitled to conduct discovery with respect to the missing wood chip. The good cause standard requires petitioner to at least attempt to identify what he expects to uncover through his discovery requests. *Williams v. Bagley*, 380 F.3d 932, 976 (6th Cir. 2004). Petitioner has not established how the discovery sought could advance his claim challenging the sufficiency of the evidence, or lead to other evidence that might advance the claim. That is, petitioner has not alleged facts which, if more fully developed though the discovery he seeks, would entitle him to relief. The Court notes that the record contains testimony concerning the wood chip, as well as pictures of the exhibit, including a photograph of the wood chip as it was found before it was removed from underneath the car. (Tr. Trans. Vol. VIII, Tr. Vol. 6 at 1614, 1620-1625; Doc. # 144, Respondent's Third Expansion of the Record, Vol. I at 70, 91-97.) Petitioner has not attempted to explain why the missing wood chip is important to proving any of his claims, or why the photographs and testimony concerning the wood chip contained within the record are inadequate. Petitioner has not alleged, and it is not otherwise apparent to this Court, how directing the state to search for something it cannot find will yield any helpful information. The fact that the exhibit has gone missing is unfortunate, but the Court can find no reason to require the Franklin County Prosecutor to search his entire evidence room for a wood chip that the state has represented it has been unable to locate. The discovery of lost evidence in an unrelated case does not justify discovery as to any of petitioner's claims.

In rejecting petitioner's sufficiency of the evidence claim, the Ohio Supreme Court cited numerous other sources of evidence against petitioner, and did not appear to rely as significantly on the missing wood chip as petitioner would have this Court believe. The wood chip was just one piece of evidence introduced against petitioner, and upon which the jury could have based its verdict. Therefore, petitioner is unlikely to prevail on his insufficient evidence claim.

## II.  Motion for an Evidentiary Hearing

Petitioner has also filed a motion for an evidentiary hearing. (Doc. # 186.) Because the Court has determined that petitioner is entitled to conduct limited discovery on some of his claims, his motion for an evidentiary hearing will be denied without prejudice, subject to renewal after completion of the limited discovery granted by the Court.

## III.  Conclusion

For the foregoing reasons, the Court concludes that petitioner has satisfied the good cause standard set forth in Habeas Corpus Rule 6 to depose his trial counsel, Karl Schneider and Thomas Erlenbach, in connection with his fifth, seventh and eighth grounds for relief. Although the Court concludes that discovery is warranted, the Court will not permit prolonged, unlimited

discovery.  Petitioner shall conduct any discovery granted by the Court within ninety (90) days

from the date of this Order.

**IT IS SO ORDERED.**

**    s/Algenon L. Marbley            **
**ALGENON L. MARBLEY**
**United States District Judge**

**Dated: September 30, 2009**